# Case No. 11-17676

# UNITED STATES COURT OF APPEALS

## FOR THE 9TH CIRCUIT

_____

## BORIS Y. LEVITT, ET AL.

Plaintiffs-Appellants

vs.

## YELP! INC.

Defendant–Respondent

_____

Appeal from United States District Court, Northern District of California
District Court Case Numbers 3:10-CV-01321-EMC & 3:10-CV-02351-EMC
(Consolidated); The Honorable Edward M. Chen, Judge, Presiding

_____

# APPELLANTS' BRIEF

_____

LAWRENCE D. MURRAY (SBN 77536)
JOHN F. HENNING III (SBN 188416)
ROBERT C. STRICKLAND (SBN 243757)
MURRAY & ASSOCIATES
1781 Union Street
San Francisco, CA 94123
Tel: (415) 673-0555
Fax: (415) 928-4084
**Attorneys for Appellants**
**BORIS Y. LEVITT, ET AL.**

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure,

appellants are not a publicly-held corporation, does not issue stock and does

not have a parent corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

Corporate Disclosure Statement                                                    i

Table of Contents                                                                ii

Table of Authorities                                                              v

STATEMENT OF JURISDICTION                                                         1

STATEMENT OF ISSUES PRESENTED FOR REVIEW                                          2

STATEMENT OF THE CASE                                                             3

STANDARD OF REVIEW                                                               7

INTRODUCTION                                                                      8

PLAINTIFFS' STATEMENT OF FACTS                                                   13

    A.    Yelp!'s Background                                 13

    B.    Plaintiffs' Individual Experiences with Yelp!      16

I.    LEGAL ARGUMENT                                                             20

    A.    Applicable Legal Standards                         20

    B.    The District Court Committed Reversible Error In
       Finding That Yelp!'s Creation of Negative Reviews
       and Yelp!'s Extortionate Activities Are Immune
       From Plaintiffs' Claims under the CDA              21

        1.    The Legislative Intent of the Communications
           Decency Act Was Only to Protect Internet
           Providers From Being Penalized for Third-Party
           Content Placed On Their Web-Sites                 21

2.  The Immunity Ruling Has No Basis In Law or Fact, Because Yelp Created and Manipulated Its Own Content, Not Just the Content of Third-Parties   22

3.  The District Court's Ruling Erroneously Condones Illegal Conduct, Wrongly Interpreting the CDA As Immunizing Unlawful Behavior   32

4.  Legislative History of CDA Does Not Support District Court's Ruling   33

5.  Several Legal Decisions Provide Support for Plaintiffs' Position That the CDA Does Not Afford Yelp! Immunity Under the Alleged Facts   35

C.  THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY RULING THAT PLAINTIFFS' ALLEGATIONS WERE MERELY SPECULATIVE   37

1.  The Applicable Rules of Pleading Allow for Pleading for Recovery That Is "Remote" and "Unlikely"   37

2.  The District Court Erroneously Applied *Twombly* In Ruling That Plaintiffs' Allegations Were Speculative   39

D.  THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY RULING THAT PLAINTIFFS HAVE NOT STATED A VALID CLAIM FOR UNFAIR COMPETITION   41

1.  The Law of the Case Doctrine Does Not Apply   41

2.  Plaintiffs Adequately Alleged Unfair Competition Claims   42

a.  Plaintiffs Properly Alleged Unlawful Conduct   42

iii

b.  Plaintiffs Properly Alleged Unfair
Conduct                                    44

E.  THE DISTRICT COURT COMMITTED REVERSIBLE
ERROR BY RULING THAT PLAINTIFFS HAVE NOT
STATED A VALID CLAIM FOR CIVIL EXTORTION
AND ATTEMPTED CIVIL EXTORTION            48

F.  THE DISTRICT COURT COMMITTED REVERSIBLE
ERROR BY PROHIBITING PLAINTIFFS FROM
OBTAINING DISCOVERY BEFORE ORDERING
DISMISSAL OF THE CASE                    50

G.  THE DISTRICT COURT CORECTLY RULED THAT
PLAINTIFFS HAVE ARTICLE III STANDING     52

H.  PLAINTIFFS HAVE CLASS STANDING        57

II.  CONCLUSION                               61

CERTIFICATE OF COMPLIANCE PURSUANT TO
FED.R.APP. 32(a)(7)C) AND CIRCUIT RULE 32-1   62

STATEMENT OF RELATED CASES
PURSUANT TO NINTH CIRCUIT RULE 28-2.6         63

CERTIFICATE OF SERVICE                        64

# <u>TABLE OF AUTHORITIES</u>

## U. S. SUPREME COURT CASES

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007)    20, 37, 38

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv*.,
    528 U.S. 167, 180-81 (2000)    52


## FEDERAL CASES

*Anthony v. Yahoo! Inc*., 421 F.Supp.2d 1257, 1263 (N.D. Cal. 2006)    25, 29

*Asia Economic Institute v. Xcentric Ventures*, LLC, No. CV 10-01360
    SVW (PJWx) 2011 WL 2469822 (C.D. Cal. May 4, 2011)    30

*Catholic League for Religious and Civil Rights v. City & Cnty.
    of S.F.*, 624 F.3d 1043, 1049 (9th Cir. 2010)    53

*Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996)    7, 20

*Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.*,
    519 F.3d 666 (2008)    34

*Colonial Am. Casualty and Surety Co. v. Bay Commercial
    Construction Co*., No. C 04-1714 PJH, 2004
    WL 2434955 (N.D. Cal. Oct. 29, 2004)    47

*Dodd-Owens v. Kyphon, Inc*., No. C06-3988, 2008 WL 410241
    at *3 (N.D. Cal. Feb. 12, 2008)    60

*Ewert v. eBay, Inc.,* Nos. C-07-0219 RMW, C-07-04487 RMW,
    2010 WL 4269259 at *3 (N.D. Cal. Oct. 25, 2010)    59

*Fair Housing Council v. Roommates.com, LLC*,
    521 F.3d 1157, 1163-1164 (2008) (en banc)    21, 25, 34

*Farr v. United States*, 990 F.2d 451, 454 (9th Cir. 1993)　　　　55

*Ferrington v. McAfee, Inc*., 2010 WL 3910169 at * 13
　　(N.D. Cal. Oct. 5, 2010)　　　　48

*Fraley v. Facebook* 2011 U.S. Dist. LEXIS 145195;
　　101 U.S.P.Q.2D (BNA) 1348 (Dec. 16, 2011)　　　　35

*George Lussier Enters., Inc. v. Subaru of New England, Inc*.,
　　2001 WL 920060 at *17 (D.N.H. Aug. 3, 2001)　　　　58

*GreenPeace, Inc. v. State of France*,
　　946 F. Supp. 773, 789 (C.D. Cal. 1996)　　　　50

*Hisamatsu v. Niroula*, No. C-07-04371-JSW (EDL),
　　2009 WL 4456392 at *5 (N.D. Cal. Oct. 22, 2009)　　　　43, 49

*Holomaxx Technologies v. Microsoft Corp*., No. CV-10-4924 JF,
　　2011 WL 865278 (N.D. Cal. March 11, 2011)　　　　31

*Holomaxx Technologies v. Yahoo! Inc*., No. CV-10-4926-JF, 2011
　　WL 865794 (N.D. Cal. March 11, 2011)　　　　31

*Hy Cite Corp. v. Badbusinessbureau.com, L.L.C*.,
　　418 F.Supp.2d 1142, 1149 (D. Ariz. 2005)　　　　28

*In re Actimmune Mktg. Litigation*, No. C 08-02376 MHP,
　　2009 WL 3740648 at *15 (N.D. Cal. Nov. 6, 2009)　　　　43

*Jones v. Dirty World Entertainment*, 2012 U.S. Dist. LEXIS
　　2525, 11-12; 40 Media L. Rep. 1153 (E.D. Kentucky, 2012)　　　　36

*Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)　　　　7

*Kruska v. Perverted Justice Foundation Incorporated.Org*,
　　No. CV-08-00054-PHX-SMM, 2010 WL 4791666
　　at *5 (D. Ariz. Nov. 18, 2010)　　　　28

vi

*MCW, Inc. v. Badbusinessbureau.com, LLC.,* 2004 U.S. Dist.
  LEXIS 6678, No. 3:02-CV-2727-G at *34, fn 12
  (N.D. Tex. April 19, 2004)                                    22, 36

*Miller v. Gammie,* 335 F.3d 889 (9th Cir. 2003)                    51

*Monex v. Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148,
  1155-56 (C.D. Cal. 2010)                                        49

*Myers v. Medquist, Inc*., No. 05-4608, 2006 WL 3751210
  (D.N.J. Dec. 20, 2006)                                          60

*Padgett v. City of Monte Sereno*, No. C 04-03946 JW,
  2007 WL 878575 at *1 (N.D. Cal. March 20, 2007)                 49

*Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998)          20, 38

*Rachford v. Air Line Pilots Assoc*., No. C 03-3618PJH,
  2006 WL 1699578 at *3 (N.D. Cal. June 16, 2006)                 53

*Schlagal v. Learning Tree, Int'l*, No. 98-6384, 1999 WL 672306
  at *3 (C.D. Cal. Feb. 23, 1999)                                 59

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 412 (7th Cir. 2010)      51

*Swift v. Zynga Game Network*, No. C 09-05443 SBA,
  2010 WL 4569889 at *10 (N.D. Cal. Nov. 3, 2010)                 20

*U.S. v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)     41

*United States v. Lisinski*, 728 F.2d 887, 891 (1984)               44

*United States v. Rivera Rangel*, 396 F.3d 476, 484 (1st Cir. 2005) 44

*Westways World Travel, Inc. v. AMR Corp*., No. EDCV 99-386,
  2005 WL 6523266 at *8 (C.D. Cal. Feb. 24, 2005)                 58

vii

**STATE CASES**

*Barquis v. Merchants Collection Ass'n.,* 7 Cal. 3d 94, 113 (1972)    45

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163, 180 (1999)    45

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1359 (2010)    42

*McKell v. Washington Mutual, Inc.,* 142 Cal. App. 4th 1457, 1471 (2006)    42

*People v. Casa Blanca Convalescent Homes, Inc.*,
    159 Cal. App. 3d 509, 530 (1984)    45

*People v. Oppenheimer*, 209 Cal.App.2d 413, 422 (1963)    44

*Rubin v. Green*, 4 Cal.4th 1187, 1200 (1993)    45

*Smith v. State Farm Mutual Auto. Ins*. Co,
    93 Cal.App.4th 700, 718-19 (2001)    45

*Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1335 (2009)    42

**FEDERAL RULES & STATUTES**

18 U.S.C. §§ 875–877    32

18 U.S.C. § 875(d)    32, 33

18 U.S.C. § 1951    33

18 U.S.C. § 1951(a)    33

18 U.S.C. § 1951(b)(2)    43

28 U.S.C. § 1291    1

28 U.S.C. § 1331                                                         1

47 U.S.C. § 230                                                          2, 21

47 U.S.C. § 230(b)(1)                                                    21

47 U.S.C. § 230(b)(4)                                                    21

47 U.S.C. § 230(c)(1)                             22, 23, 24, 29, 31, 49

47 U.S.C. § 230(c)(2)                                                    31

47 U.S.C. § 230(f)(3)                                          22, 34, 36

Federal Rule of Civil Procedure Rule 8(a)(2)                            37

Federal Rule of Civil Procedure Rule 12(b)(1)                          53

Federal Rule of Civil Procedure Rule 12(b)(6)                  20, 29, 38

Federal Rule of Civil Procedure Rule 12(f)                     20, 57

**STATE RULES & STATUTES**

Business and Professions Code § 17200                          42, 47

Penal Code § 518                                                        42

Penal Code § 519                                               42, 43, 49

Penal Code § 523                                           42, 43, 44, 49

Penal Code § 524                                               42, 43

**OTHER**

H.R. Rep. No. 104-458 (1996) (Conf. Rep.),
      as reprinted in 1996 U.S.C.C.A.N. 10                              21

## STATEMENT OF JURISDICTION

The District Court and this Court of Appeals have jurisdiction pursuant to 28 U.S.C. Section 1331 (federal question).

This is an appeal from a final judgment of the District Court disposing of all claims with respect to all parties, and falls within this Court's appellate jurisdiction under 28 U.S.C. Section 1291. The District Court entered final judgment on October 26, 2011. (Excerpt of Record ("ER") 01.) The Notice of Appeal was timely filed on November 3, 2011. (ER 17.)

1

## **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1. Does the Communications Decency Act (47 U.S.C. Sec. 230) shield web-site internet service provider Yelp! from liability when the content at issue was created and/or developed by Yelp!?

2. Does the Communications Decency Act provide blanket protection for internet service provider Yelp! when Yelp! demands that non-subscriber individuals and businesses pay money to Yelp!, or else be labeled as providing substandard goods and services?

3. By using the internet, is a company protected from engaging in extortion and unfair competition when such illegal activity would be actionable if the internet was not used as part of the extortionate and unfair conduct?

4. Do the Plaintiffs business owners have standing to raise claims of unfair competition, civil extortion, and attempted civil extortion against internet service provider Yelp!?

5. When multiple plaintiffs complain that Yelp! threatens them with negative reviews if they do not pay money to Yelp!, and on refusing to pay money, immediately negative reviews are published on Yelp! (and no other internet service) with facts reported that could not have occurred (i.e., the plaintiff does not provide that type of product), is the allegation that Yelp!'s employees created the reviews too speculative to state a claim under *Twombly*.

6. May a court dismiss a complaint for "speculative" allegations without giving the plaintiffs an opportunity to conduct the discovery necessary to substantiate such complaints where the facts and law, if proved, would indicate a valid claim?

2

## STATEMENT OF THE CASE

Plaintiffs-Appellants (hereinafter referred to as Plaintiffs) Boris Y. Levitt, d/b/a Renaissance Restoration, a/k/a Renaissance Furniture Restoration ("Levitt"), Cats and Dogs Animal Hospital, Inc. ("Cats and Dogs"), Tracy Chan, d/b/a Marina Dental Care, a/k/a Marina Dental Care ("Chan") and John Mercurio d/b/a Wheel Techniques ("Wheel Techniques") on behalf of themselves and all others similarly situated, filed a class action Third Amended and Consolidated Complaint ("TAC") against Defendant Yelp! Inc. ("Yelp!" or "Defendant") for a violation of Business and Professions Code section 17200, civil extortion and attempted civil extortion. Plaintiffs brought their claims on behalf of an ascertainable class under California's Unfair Competition Law ("UCL") and for civil and attempted civil extortion.

### The Court's Order on Yelp!'s Prior Motion to Dismiss

On March 22, 2011, the Court issued an order on Yelp!'s Motion to Dismiss the Second Amended Class Action Complaint ("SAC") and to Dismiss or Strike Class Allegations. (*See* Dkt. 70 ("Order"), Excerpt of Record ("ER") 370.) The Court found that Plaintiffs had alleged facts sufficient to establish Article III standing and overruled Yelp!'s standing and jurisdictional challenges. (Order, 9:15-16, ER 378.) Notably, the Court further

3

found that Communications Decency Act ("CDA") did "not provide Yelp! blanket 'immunity' from suit or in any way limit this court's jurisdiction over Plaintiff's claims." (Order, 11:6-7; 14:14-22, 15:25-27; 16:2-4; 16:20-27, ER 380-5.)  In addition, the Court found that Plaintiffs had also alleged facts sufficient to satisfy the Unfair Competition Law standing requirements. (Order, 12:18-20, ER 381.)

However, the Court found that the SAC didn't allege sufficient facts to demonstrate that Yelp!'s conduct amounted to an implied extortionate threat because 1) it was speculative that Yelp! manufactures its own reviews or manipulates reviews of businesses who purchase advertising; 2) no distinct communication of a threat could be inferred; and 3) the apparent correlations between Plaintiffs' overall star ratings and their advertising decisions only provided select snapshots of Plaintiffs' overall star ratings.  (Order, 17:6-10; 17:11-12; 17:20-23, ER 386.)

For Plaintiffs' unfair prong UCL claim, the Court found that Plaintiffs didn't allege facts sufficient to show that they had 1) met the *Cel Tech* or *South Bay* tests; and 2) that the theory of extortion as a theory of unfairness failed for the same reasons that the unlawful prong had not been met.  (Order, 19:22-25; 19:25-27, ER 388.)  Finally, the Court found it unnecessary to address the class action allegations. (Order, 20:22-23, ER 388.)

4

**Plaintiffs Seek Discovery But Are Precluded from Doing So**

After receiving the Order re the SAC, Plaintiffs sought discovery of the names, addresses, and contact information of Yelp!'s former sales employees so that they could discover and demonstrate, among other issues, whether Yelp! had a widespread policy of manipulating overall (summary) star ratings, drafting negative reviews to extort advertising money out of businesses and their owners, and develop issues relating to Yelp!'s conduct.  Plaintiffs moved to compel this information, but the discovery request was denied on August 1, 2011, by the court.  (*See* Dkt. No. 82, Order pp. 5:8-9, ER 6.)

**The District Court Dismisses the Third Amended Complaint Without Leave to Amend**

Defendant Yelp! moved to dismiss this case and to strike or dismiss the class allegations.  (ER 311.)   On October 26, 2011, the District Court granted Yelp!'s motion to dismiss the case without leave to amend. (ER 2.)   The dismissal was premised on three findings.  The District Court determined that the allegations that Yelp's own employees authored negative reviews or that Yelp paid users to do so were speculative.  (ER 8-9.)  Judge Chen also found that Communications Decency Act, Section 230(c)(1), ("CDA") allows Yelp to extort funds from businesses by removing user reviews, making false and

5

misleading statements about the business, and changing the order of such reviews in order to secure money from businesses.  (ER10-14.)  The District Court also rejected the claim that Yelp! created the summary "star" reviews, finding it was merely aggregating user content and thus did not make Yelp! a content provider. (Order 9:14-23, ER 10.)   However, this finding contradicts the District Court's own acknowledgement that the Plaintiffs did allege that Yelp! created negative reviews and manipulates customer ratings.  (See 10/14/2011 Hearing Transcript 000038:8-10, and 10/26/2011; Order page 7: 7-14, ER 8  ["Yelp employees have written reviews, even for pay . . ."]; and TAC at paras. 37-38, E.R 349.)

The District Court did not address the motion to strike Plaintiffs' class allegations because it had found that the TAC failed to state a plausible claim for relief.  (Order, page 1, 4, line 21-22; ER 2, 5.)

Plaintiffs seek a reversal of the District Court's order and an order remanding the action for further proceedings, and trial.

## **STANDARD OF REVIEW**

A district court's grant of a motion to dismiss under Rule 12(b)(6) is reviewed *de novo*. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

When a grant of a motion to dismiss is reviewed, the Court of Appeals will, "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id. See also, Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996).

The Plaintiffs-Appellants raised the issues at length in the pleadings and at oral argument. (ER 148-177, 178-187, 188-218, 392-423, 475-506.)

## INTRODUCTION

Via the internet, Yelp! provides reviews of business products and services nationwide by "customers," claiming the reviews are done in an unbiased and neutral manner.  Reviews are actually posted on Yelp!, some by Yelp!'s staff, some by users permitted to post, and some by the public.

When a business is approached by Yelp! sales staff and asked to pay money for a "subscription," if the business pays, positive reviews are floated to the top of the list of reviews by Yelp! and negative reviews are removed. The business receives a favorable rating appearance due to the removal of negative reviews by Yelp!   In addition, independent of the manipulation of "customer" reviews, Yelp! publishes its own summary statement of the quality of goods and services of the business, purportedly a neutral and unbiased statement based on the list of the "customer" reviews.   When a business pays Yelp! "advertising" dollars, its five star summary rating increases immediately and dramatically.

If the business refuses to pay the monthly "subscription" fee, which runs $300 to $1200 per month, their favorable "customer" reviews are often stripped from the review page leaving only derogatory customer reviews. Yelp! then publishes their own summary assessment of that business in a derogatory terms which almost universally causes harm to the business.  The

8

harm to the business complained of in this suit is from the removal of positive "customer" reviews concurrently with the summary statement by Yelp! giving a poor rating to the business which refuses to pay money to Yelp! for "advertising."

Unlike the protections sought by the Communications Decency Act, ("CDA")  it is the conduct of Yelp! in stripping "customer" reviews with the effect to force payments which is the basis of suit.  Plaintiffs' suit is also based on Yelp!'s published summary statement, created not by users, but by Yelp! assigning an overall rating to the goods and services after it strips away good "customer" rating for those businesses and individuals who refuse to pay Yelp!.

Significantly, this case does not involve third-parties manipulating the summary rating.  Only Yelp! creates and manipulates the summary star rating which harms small businesses, and which is the basis of this suit.  Only Yelp! strips away good "customer" reviews or creates and publishes negative reviews then publishes a negative summary star rating about the business immediately when a customer refuses payment.  Only Yelp! financially benefits from creating a false impression via the positive or negative "customer" reviews added or deleted from the business listing.

Notably, almost immediately upon payment or lack of payment of the monthly "advertisement" fee to Yelp!, Yelp! changes the Yelp! generated summary rating from negative to positive, if payments are made, and from positive to negative, if the payments are not made. Good or bad reviews are similarly moved onto that business' page or taken from it by Yelp! based on the willingness of a business to pay "advertising" dollars. When suit was filed to halt this practice, Yelp! claimed protection under the Communication Decency Act.

The Communications Decency Act ("CDA") was created to protect Internet Service Providers ("ISP's") from responsibility for content of those customers who use the service to post on the internet. Therefore, it only makes sense that an ISP should not be held responsible for that which it innocently passes on. However, the claims embodied in the TAC are *not* based on the statements of independent users sent to Yelp! as an internet service provider which just passed on the information in a neutral manner. Rather, Yelp! manipulates the "customer" ratings by removing positive reviews for those who don't pay in order to force that business to pay. Yelp! then publishes its own summary star rating of the quality of the business goods and services as if it was from the users of its service. In this role, Yelp! is not a neutral innocently passing on information. Rather, it has

10

created the information which it misrepresents as based on comments by unbiased "customers." It is the summary star rating manipulated by Yelp!, published by Yelp!, and used by Yelp! to force payments from businesses that the CDA had no intention to shield from liability. The district court erred in giving such broad and sweeping protection to the extortionate business practices here.

By its own straightforward language, the CDA does not give protection to internet service providers who manipulate reviews for their own profit, and based on such manipulation, publish their own misleading star rating and information about a particular business knowing it is not accurate.

This is the fundamental error of the trial court's decision as this protection was never envisioned nor contained in the CDA by Congress. Absent reversal, businesses across the United States will continue to pay a monthly extortion and those who have refused to pay will continue to suffer loss of clients and income due to the knowingly false statements made by Yelp! as to the quality of goods and services provided by that business.

Under the District Court's rationale, a criminal enterprise could create a web-site, thus becoming an internet service provider, and then legally make extortionate threats against individuals who want objectionable reviews or defamatory content referring to them removed. Under the District Court's

11

reasoning, such activity is "immune" from civil liability under the CDA because the criminal enterprise is a "provider or user of an interactive computer service." Such a result has no logical or legal basis, and should not be condoned by the United States Court of Appeals for the Ninth Circuit.

///

## PLAINTIFFS' STATEMENT OF FACTS

### A.     Yelp!'s Background

Yelp! is a review website, which allows only certain "users" to post reviews and rate businesses.  (TAC ¶2  ER 344.)  Yelp! draws over 25 million people each month, who can search the public ratings of businesses and some may post their own reviews.  *Id*.  Customers post reviews and assign a star rating, with one star being the lowest rating and five stars being the highest rating.  *Id*.  Yelp! then assigns the business a Yelp! overall star rating based only on *some* of the customer user reviews.  *Id*.

Yelp! claims that its website is "Real People. Real Reviews.," and that Yelp! will only remove user or customer reviews under certain circumstances, including: 1) when Yelp!'s automated filter suppresses the review; 2) when the review violates the Yelp! Terms of Service or Content Guidelines; or 3) when the user removes the review ("Review Terms").[1]  (TAC ¶¶3, 6, ER 344.)

Despite these representations, Yelp! does not comply with its own Review Terms.  (TAC ¶7, ER 345.)    Instead, Yelp! actively manipulates the reviews of users in order to coerce businesses to purchase advertising.  *Id*.  Yelp! uses several approaches to effectively force payments and obtain its

---

[1] "Review Terms" is defined in paragraph 6 of the TAC exactly as it is defined above.  ER345  Appellant's use of the phrase "Review Terms" refers only to the defining language set forth in paragraph 6.  It is not an incorporation or an incorporation by reference of any exhibits or portions of Yelp's website.

13

desired "advertising" revenues. Each approach is firmly rooted in Yelp!'s understanding that a business's reputation and revenues are often tied to rating-based websites like Yelp!.  (TAC ¶¶8, 24 ER 346, 348.)

Yelp! generates and post false negative reviews for the business, which negatively impacts the victim businesses. (TAC ¶¶ 33-34, ER 349.)  Of course, such false negative reviews also negatively affect the business' overall star rating.  *Id.*  Yelp! also generated content through agents.  (TAC ¶¶ 31-35; 39-41 ER 349.)  Yelp!'s CEO, Jeremy Stoppelman, candidly admitted that Yelp! did generate reviews and that it also paid users to generate and post those reviews.  (TAC ¶38  ER 349.)  Not only did Yelp! pay users to create content, but in 16 cities, Yelp! maintains its own "community managers" who are "encouraged to [perform] reviews."  *Id.*  Though it was "speculative" to the court, the CEO openly admitted such practice.

The foregoing allegations are of critical importance because they demonstrate that Yelp! is acting in a capacity far beyond that of an innocent publisher of third-party content.  Rather, Yelp! is creating content, substantively editing content, and developing content.  (TAC 33-34, 38-41, ER 349.)  These acts are not done for the purpose of removing defamatory material from the website, or any "good Samaritan" purpose, but rather for the purpose of advancing Yelp!'s illegal and unethical practice of extorting money from

14

businesses.

To instill fear in a business and coerce payments for advertising, Yelp! creates a business's overall star rating (the summary rating) primarily by manipulating the reviews left in or taken out of that business's file, contrary to Yelp!'s own policies and representations. (TAC ¶¶34-35, 37, 38, 40 ER 349-350.) This occurs in several different ways. Yelp! may manipulate which user or customer reviews are filtered (essentially suppressed from general public view and not considered as part of the star rating), which affects and controls the business's overall star rating. (TAC at ¶40, ER 350.) Yelp! may refuse to remove reviews that violate its own Review Terms, which affects and controls the business's overall star rating. *Id.* Yelp! may also represent to a business that it has the ability to remove reviews, which would affect and control the business's overall star rating. (TAC ¶39, ER 350.)

Each of Yelp!'s approaches revolves around unfair rating changes, which businesses fear because of the corresponding loss of customers and revenue. (TAC ¶¶7, 8, 10, 39-41 ER 346, 350.) Yelp! capitalizes on this fear by both implicit and explicit threats that if the business does not pay for advertising, its overall star rating and reviews will decline. *Id.*

///

///

15

## B.    Plaintiffs' Individual Experiences with Yelp!

Non Sponsor Plaintiff Levitt [2] was contacted by a Yelp! sales representative in July 2009 asking Levitt to purchase advertising.  (TAC ¶¶46-47, ER 351.)   Levitt declined the offer.  (TAC ¶47, ER 351.)  *Just two days* after Levitt declined Yelp!'s advertising solicitation, all but one of his top-rated 5 star reviews was removed from his public Yelp! review page. (TAC ¶49, ER 351.)  Yelp!'s action caused Levitt's overall outstanding summary star rating to plummet to 3.5 stars.  (TAC ¶¶ 47-49, ER 351.)   Yelp!'s manipulation of the summary rating caused Levitt to have significantly reduced customer interest in his business (his Yelp! page was reviewed only 158 times as opposed to 261 times the previous month).  (TAC ¶ 49, ER 351.)  And Levitt's monthly business income declined accordingly.  (TAC ¶49, ER 351.)

Additionally, as opposed to functioning as a neutral ISP, Yelp! furthered its unfair conduct by restricting Levitt's searchable business category designations from multiple categories to just one category.  (TAC ¶53, ER 352.)

In September 2009, a Yelp! sales representative began calling Non Sponsor Cats and Dogs and promised to manipulate its reviews if Cats and Dogs purchased advertising.  (TAC ¶¶ 58-61, ER 353.)  *Not even one week*

---

[2]/ "Sponsors" are those who advertise and pay money to Yelp!   "Non Sponsors" are those who refuse the request to advertise and pay money to Yelp!

after Cats and Dogs declined to purchase advertising, Yelp! posted multiple negative reviews. (TAC ¶¶66-68, ER 354-5.)  One of these negative reviews had been removed before because it violated Yelp!'s Review Terms. (TAC ¶60-61, 66, ER 353-4.) The other new negative "customer" reviews were manufactured by Yelp! or its agents. (TAC ¶69, ER 355.)  Yelp!'s conduct caused Cats and Dogs reputational harm, a loss in customers, page views, sales, business revenues and assets. (TAC ¶71, ER 355.)

In May or June of 2008, Sponsor Dr. Chan was contacted by a Yelp! sales representative and offered the opportunity to advertise. (TAC ¶87, ER 357.)  Yelp! told Dr. Chan that Yelp! employees had the ability to remove reviews from a business's review page. (TAC ¶¶88, 91, ER 357-8.)  In August 2008, Dr. Chan declined to purchase advertising from the sales representative. (TAC ¶89-90, ER 358.)  *Within just two to three days* after Dr. Chan declined to purchase advertising, Yelp! removed nine top-rating 5-star customer reviews from Dr. Chan's Yelp! review page. (TAC ¶90, ER 358.)  Yelp! then published Dr. Chan's overall summary star rating to plunge from the highest 5 star rating to 3 stars. *Id*.  Because Dr. Chan feared that Yelp! would continue to manipulate her public reviews (which Yelp! admitted they could and would do), she was compelled to purchase advertising. (TAC ¶¶92-93, ER 358.)  Just days after Dr. Chan purchased advertising, the 5 star customer reviews Yelp!

17

had removed were suddenly reinstated and Dr. Chan's overall Yelp! summary star rating rose again.  TAC ¶93, ER 358.  In October 2008, Yelp! asked Dr. Chan to increase her advertising payments to $500.00 per month.  (TAC ¶94, ER 359.)  Instead, Dr. Chan cancelled her contract, and Yelp! then removed positive customer reviews from her review page and replaced them with negative customer reviews.  (TAC ¶95, ER 359.)  Yelp!'s conduct caused a decline in her overall Yelp! summary star rating, the number of Dr. Chan's new patients declined as well as her revenues and business assets, and her reputation was harmed. (TAC ¶¶101-02, ER 360.)

In or around late 2008 and early 2009, Wheel Techniques began receiving calls from Yelp! representatives requesting that Wheel Techniques purchase advertising.  (TAC ¶¶74-76, ER 355-6.)  Around the same time period as it began receiving advertising calls, Wheel Techniques also began receiving negative customer reviews on Yelp!.  (TAC ¶¶74, 76, ER 355-6.) The negative customer reviews did not appear to be written by actual customers of Wheel Techniques because Wheel Techniques had no records of performing the reviewed work or the names of the reviewers who claimed they had visited the shop.  (TAC ¶¶74-76, ER 355-6.)

On March 8, 2010, Wheel Techniques was again contacted by Yelp! for advertising, which it declined, and *within minutes* a one-star review was moved

18

to the top of Wheel Technique's Yelp! review page replacing a five-star review that had previously been listed at the top of the review page.  (TAC ¶¶79-80, ER 356.)  Wheel Techniques alleges that Yelp! employees or individuals acting on behalf of Yelp! manufactured the negative customer reviews that began appearing when it declined to purchase advertising, and moved the one-star review to the top of its review page after it declined to purchase advertising.  (TAC ¶¶77, 81, ER 356.)

Yelp!'s conduct manipulating customer ratings caused each of the named Plaintiffs' overall Yelp! summary star ratings to decline and that resulted in a decrease in Plaintiffs' customers, a loss of sales, revenues and assets, and reputational injuries.  (TAC ¶¶55, 71, 83, 102, , ER 352, 355, 357, 360.)   These victims seek injunctive and restitution relief for payments they made to Yelp! due to its unlawful extortion and unfair conduct.  (TAC ¶124-25, ER 365.)

Those who did not pay the amounts demanded seek injunctive relief ordering Yelp! to cease its UCL violations.  (TAC ¶126-27, ER 365.) Sponsors and Non Sponsors seek damages and punitive damages for attempted civil extortion and civil extortion.  (TAC ¶¶138-39, 145-46, ER 367-8.)

///

## I.    LEGAL ARGUMENT

### A.    Applicable Legal Standards.

When a grant of a motion to dismiss is reviewed, the Court of Appeals will, "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id. See also, Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996).

Similarly, when ruling on the Rule 12(b)(6) motion, the District Court is to accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). A plaintiff must only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). As will be discussed infra, the District Court did not comply with these standards.

A Rule 12(f) motion "is not the proper vehicle for dismissing portions of a complaint when the 12(f) challenge is really an attempt to have portions of the complaint dismissed; such a challenge is better suited for a 12(b)(6) motion to dismiss . . . ." *Swift v. Zynga Game Network*, No. C 09-05443 SBA, 2010 WL 4569889 at *10 (N.D. Cal. Nov. 3, 2010) (denying motion to strike Rule 23 class allegations).

20

**B.    The District Court Committed Reversible Error In Finding That Yelp!'s Creation of Negative Reviews and Yelp!'s Extortionate Activities Are Immune From Plaintiffs' Claims under the CDA.**

**1.    The Legislative Intent of the Communications Decency Act Was Only to Protect Internet Providers From Being Penalized for Third-Party Content Placed On Their Web-Sites.**

In 1996, Congress passed the Communications Decency Act ("CDA"), 47 U.S.C. § 230. The CDA was a congressional attempt to "remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material." § 230(b)(4). At the same time, Congress sought to "promote the continued development of the Internet and other interactive computer services and other interactive media." § 230(b)(1). The Ninth Circuit, en banc, has observed similarly.  See, *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157, 1163-1164 (2008) (en banc), citing H.R. Rep. No. 104-458 (1996) (Conf. Rep.), as reprinted in 1996 U.S.C.C.A.N. 10.

Nowhere has it ever been expressed that the purpose or intent of the CDA was to protect internet service providers from threatening businesses with bad ratings in exchange for payment of money.  Further, the CDA's own language demonstrates it does not protect a company from liability for claims when the objectionable content at issue was created by the defendant. In

21

pertinent part, the CDA provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information *provided by another* information content provider." § 230(c)(1). (Emphasis supplied.)

The CDA requires courts to consider whether a party "is responsible, in whole or in part, for the creation or development of information." § 230(f)(3) This provision is important, because, under the plain wording of the statute, a party may be liable responsible for information created or developed by a third party without actually creating or developing the information itself. See, e.g. *MCW, Inc. v. Badbusinessbureau.com*, *LLC.,* 2004 U.S. Dist. LEXIS 6678, No. 3:02-CV-2727-G at *34, fn 12 (N.D. Tex. April 19, 2004).

### 2.    The Immunity Ruling Has No Basis In Law or Fact, Because Yelp Created and Manipulated Its Own Content, Not Just the Content of Third-Parties.

The critical allegations in the TAC are as follows: 1) Yelp! created and manufactured its own negative reviews of Plaintiffs' businesses [TAC ¶¶ 37-38, 41-46, 67, 69, 74-77, 82; ER 349, 350351, 354-357.]; 2) Yelp! removed positive reviews thereby changing the overall star rating, immediately after Plaintiffs declined to purchase advertising or terminated their advertising contracts [TAC ¶¶49, 66, 90; ER 351, 354, 358.]; 3) Yelp! told Plaintiffs that paying for advertising would impact Plaintiffs' overall star ratings and

22

represented that its employees have the ability to remove reviews [TAC ¶78, 91, 99; ER 356, 358, 360.]; and 4) Yelp! manipulated reviews, including the order of reviews, depending on whether a business advertises [*see, e.g*., TAC ¶¶80-81; ER 356.]

The District Court erroneously found that Yelp! has "immunity" for its manipulation of third party review under Section 230(c) of the CDA. (10/26/11 Order at 10:13-21, ER 11; 13:3-6, ER 14.)  More specifically, the Court wrote that, "even assuming Plaintiffs have adequately pled allegations stating a claim of an extortionate threat with respect to Yelp!'s alleged manipulation of user reviews, Defendant is immune from suit under Section 230(c)(1)."  (10/26/11 Order at 13:3-5, ER 14.)  A fundamental flaw in Judge Chen's analysis is that the TAC actually alleges that Yelp! manipulates reviews that include material created by Yelp!, so immunity under the CDA does not apply.  Another fundamental flaw in this analysis is that the CDA was not meant to be construed as shield for extortionate behavior, yet the District Court inexplicably came to this conclusion.

It is helpful to analyze the specific statutory language at issue: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  CDA Section 230(c)(1).  This sentence is the so-called

23

(though wrongly so) "immunity clause" of the CDA.  However, the language reveals that it only provides for no liability if the ""information" at issue was "provided by another information content provider."  In other words, a computer service provider has no liability if publishing information "provided by another" entity or person.  So, there is no "immunity" if the content provided is <u>not</u> provided by another.  As applied here, it was error to find Yelp! was immune under Section 230(c)(1) when Yelp! was publishing its own content in the form of negative reviews created by Yelp!.

Section 230(c)(1) only affords immunity to Yelp! if those negative reviews were "provided by another information content provider;" i.e., a third-party.  This statutory-language specific analysis was never conducted by the District Court in dismissing Plaintiffs' TAC.  Instead of focusing on the plain language of the statute, the District Court incorrectly focused its inquiry only on whether a bad faith exception to immunity implicitly existed under Section 230(c)(1) for manipulating third-party reviews.  This was wholly unnecessary when the TAC alleged that it was Yelp! creating and manipulating its own reviews, not just third-party reviews.

The Ninth Circuit has ruled, en banc, that being an internet service provider does not necessarily protect a company from being a content provider:

> A website operator can be both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is "responsible, in whole or in part" for creating or developing, the website is also a content provider. Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content.

*Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162-1163 (2008) (en banc), citing *Anthony v. Yahoo! Inc.*, 421 F.Supp.2d 1257, 1263 (N.D. Cal. 2006). This is an important distinction at the crux of this appeal.

   *Rommates.com, LLC* is a case especially applicable to the instant matter. *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157 (2008). There, the plaintiffs had alleged that Roommates.com, LLC, had illegally required its web-site users to provide information regarding their gender, sexual-orientation, age, and other information, in violation of state and federal anti-discrimination laws pertaining to housing. *Id.,* at 1169-1170, 1175. The district court had held that the operator was entitled to immunity under Section 230 of the CDA. The Ninth Circuit, en banc, reversed because it found that because the operator created the discriminatory questions and choice of answers and designed its website registration process around them, it was undoubtedly the "information content provider" as to the questions and could

claim no immunity for posting them on its website, or for forcing subscribers to answer them as a condition of using its services.

> Perceptively, Chief Judge Alex Kozinski wrote:
>
> Rather, we examine the scope of plaintiffs' substantive claims only insofar as necessary to determine whether section 230 immunity applies. However, we note that asking questions certainly can violate the Fair Housing Act and analogous laws in the physical world. For example, a real estate broker may not inquire as to the race of a prospective buyer, and an employer may not inquire as to the religion of a prospective employee. If such questions are unlawful when posed face-to-face or by telephone, they don't magically become lawful when asked electronically online. The Communications Decency Act was not meant to create a lawless no-man's-land on the Internet.

*Roommates.com, LLC*, at 1164.

The aforementioned rationale is especially appropriate here because the District Court has given Yelp! a "free ride" as to "extortionate" conduct. Yelp! would be prohibited from engaging in similar behavior if it were in person or over the telephone or by mail. That it is done partially through Yelp!'s website should not magically confer immunity upon such activities under the CDA.

In one portion of the District Court's Order, the Court acknowledged that the Plaintiffs were alleging that Yelp! created its own negative reviews. (Order at 7:12-14, citing TAC paras. 37-38; ER 8, 349; but see also TAC paras. 34, 37-41, ER 349-350.)  Yet, inexplicably, when the District Court analyzed

26

the manipulation of the review rankings, the District Court then ignored that the "aggregate business rating" was based on those created not only by third-parties but also by Yelp!: "Since the aggregate rating in this case is likewise based on user-generated data, the Court finds that aspect of *Gentry* persuasive." (10/26/11 Order, 9:22-23, ER 10.) This contradictory and erroneous viewpoint is in direct contravention to the plain allegations of the TAC which allege that Yelp! created (or hired its own agents) negative reviews, and those reviews were further manipulated by Yelp! through its aggregate business rating. (TAC, paras. 37-38; 74-75; 82, ER 349-350, 355-357.)

The Court's Order to Dismiss the Third Amended Complaint is particularly erroneous in light of the Court's own prior rulings. In reviewing the SAC, the Court had previously ruled that Yelp! is *not* immunized under the CDA as to Plaintiffs' allegations that relate to "Yelp!'s own alleged postings, from statements made by its ad salespersons, or from Yelp!'s deliberate manipulation of customer reviews." (Judge Patel's Order, 15:19-21, ER 384.) The Court also found that Plaintiffs' allegations that Yelp! manufactured negative reviews is "potentially actionable, because Yelp!, and not some third-party, is the alleged provider of such content." (Judge Patel's Order, 15:25-27, ER 384.) Likewise, the Court found that "plaintiffs' fourth theory of purported threats – its representations that it could manipulate reviews in favor of

advertisers – are also actionable."  (Judge Patel's Order, 16:2-3, ER 385.)

Finally, the Court found that "[u]nder the theory of extortion proffered by

plaintiffs, Yelp!'s removal of positive user reviews certainly was not in good

faith and other courts have denied motions to dismiss on the basis of CDA

immunity in these circumstances."  (Judge Patel's Order, 16:24-27, ER 385.)

Crucially, the *only* category of Plaintiffs' allegations that the Court found to be

immunized under the CDA was "to the extent the extortion claim [was]

premised on Yelp!'s failure to remove negative reviews."  (Judge Patel's

Order, 14:25-27, ER 383.)  Plaintiffs revised the TAC accordingly and do not

allege that that Yelp!'s wrongdoing stemmed from its failure to remove

negative third-party reviews.

These allegations are more than sufficient to bypass Yelp!'s potential

liability shields that are under the CDA.  *See, e.g., Hy Cite Corp. v.*

*Badbusinessbureau.com, L.L.C*., 418 F.Supp.2d 1142, 1149 (D. Ariz. 2005)

(CDA immunization argument "ignores Plaintiff's allegations that wrongful

content appears on the Rip-off Report website in editorial comments created by

Defendants and titles to Rip-off Reports" and allegation that defendants

"produce original content contained in the Rip-off Reports."); *Kruska v.*

*Perverted Justice Foundation Incorporated.Org*, No. CV-08-00054-PHX-

SMM, 2010 WL 4791666 at *5 (D. Ariz. Nov. 18, 2010) (allegations that

28

defendant contributed content to website and that defendant worked in collusion to post and repost materials about plaintiff sufficient to avoid CDA immunity); *Anthony v. Yahoo! Inc*., 421 F.Supp.2d 1257, 1263 (N.D. Cal. 2006) (allegations that Yahoo created false online dating profiles and sent profiles of former subscribers to current members not protected under CDA).

The analysis set forth in the *Anthony* case helps shed light on this instant appeal. The District Court in *Anthony* properly held that plaintiff's claims against Yelp! were not subject to dismissal under a Rule 12(b)(6) motion to dismiss because the plaintiff alleged that Yahoo! was the author, not merely the provider, of the information at issue. *Anthony*, at 1263. The District Court astutely observed: "The CDA only immunizes 'information provided by *another* information content provider.'" 47 U.S.C. § 230(c)(1) (emphasis added). The *Anthony* decision held that because Yahoo! manufactured false profiles, then it is an "information content provider" itself and the CDA does not shield it from tort liability." *Anthony*, at 1263. There was no need for the *Anthony* court to engage in an analysis of whether a bad faith exception applied under Section 230(c)(1) when the plain language of the statute demonstrated no immunity was present if the content at issue was <u>created</u> by Yelp!.

Judge Chen's Order of Dismissal errs by circumscribing its view of Yelp!'s activities as those only of a publisher of content, rather than the correct

29

view that recognizes Yelp!'s activities as those of an author of content as well. For example, the District Court's analysis wrongly presumes Yelp! is merely a publisher or conveyor of information, even though Yelp! is "[w]rongfully manipulating a business's review page for the purpose of soliciting advertising revenues . . ."  (10/26/11 Order at 11:15-17, ER 12.)

The District Court acknowledges that Section 230(c) "provides broad immunity for publishing content provided primarily by third parties." (10/26/11 Order at 9:6-7, ER 10.)  The analysis of Yelp!'s manipulation of third party reviews, as is evident by the District Court's erroneous subtitle, is undermined by the District Court's failure to distinguish between Yelp! merely providing a platform for third-party content, and Yelp! creating its own content in the manner of false reviews.  Put another way, while the District Court analyzed "Yelp!'s Manipulation of Third Party Reviews" (see Order, 8:5 subtitle, ER 9.) it should have actually analyzed Yelp!'s manipulation of reviews by Yelp! and third parties in combination.

As such, the Judge Chen's reliance on *Asia Economic Institute v. Xcentric Ventures*, LLC, No. CV 10-01360 SVW (PJWx) 2011 WL 2469822 (C.D. Cal. May 4, 2011) is misplaced.  The *Asia Economic Institute* plaintiffs *did not* contend that defendants created or altered the content of the reports, so the holding is factually distinct.  *Asia Econ. Inst.*, 2011 WL 2469822 at *6.

30

Similarly, the District Court's analysis of a whether Section 230(c)(1) contains a "good faith" exception to "immunity" is an erroneous and unnecessary exercise. The analysis is unnecessary because non-liability is only available under Section 230(c)(1) if the internet provider is not creating the content at issue. Here, however, the TAC explicitly alleges that Yelp! is creating the objectionable content (see, e.g., TAC ¶¶ 37-38, 41-46, 67, 69, 74-77, 82, ER 349-351, 354-357.) and so Section 230(c)(1)'s so-called 'immunity" is wholly inapplicable and unnecessary. The District Court has complicated the issue unnecessarily, to the detriment of Plaintiffs.

The "good faith" analysis is only appropriate in the analysis of Section 230(c)(2), because 230(c)(2) only protects "any action voluntarily taken in good faith . . ." However, as previously explained to the District Court, Plaintiffs are not challenging Yelp!'s restriction of access to information, so any purported pleading requirements under Section 230(c)(2) are inapplicable. *See, e.g., Holomaxx Technologies v. Microsoft Corp*., No. CV-10-4924 JF, 2011 WL 865278 (N.D. Cal. March 11, 2011) (challenging whether email spam filtering was done in good faith and protected under CDA); and see *Holomaxx Technologies v. Yahoo! Inc*., No. CV-10-4926-JF, 2011 WL 865794 (N.D. Cal. March 11, 2011).

31

Notwithstanding the foregoing, the fact that Plaintiffs have alleged that Yelp! intentionally manipulated and developed its own content to attempt to *extort* money from Plaintiffs is plainly sufficient to demonstrate an absence of good faith.  In fact, Judge Patel's Order reached this conclusion as well when it stated "[u]nder the theory of extortion offered by plaintiffs, Yelp!'s removal of positive user reviews certainly <u>was not in good faith</u> . . . "  (Judge Patel's Order, 16:24-26, ER 385.)  (Emphasis added).  As such, Plaintiffs have met the pleading standard to demonstrate that Yelp! may be held liable under the CDA.

### 3. The District Court's Ruling Erroneously Condones Illegal Conduct, Wrongly Interpreting the CDA As Immunizing Unlawful Behavior.

The District Court's erroneous interpretation of the CDA results in a statutory interpretation that is unsupportable because it condones illegal conduct prohibited by federal statute.

Various federal statutes prohibit extortion.  If an individual make a threat with intent to extort, and that threat travels though interstate commerce, including the telephone or internet, that is a violation of 18 U.S.C. §§ 875–877.  Section 875(d) is most applicable here:

> Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another . . . shall be fined under this title or imprisoned not more than two years, or both.

32

A similar criminal prohibition is the Hobbs Act, 18 U.S.C. § 1951,

which prohibits extortion in interstate commerce.  Section 1951(a) sets forth:

> Whoever in any way or degree obstructs, delays, or affects
> commerce . . . by robbery or extortion or attempts or conspires so
> to do . . . shall be fined under this title or imprisoned not more
> than twenty years, or both.

Plaintiffs made this argument at hearing, and the District Court did

acknowledge at hearing that the Plaintiffs were alleging extortion:

> Counsel:  This is an opportunity that the Internet provider is using
> to force people to buy their advertising.
>
> The Court:  I understand that. And I understand – I'm going to
> assume for a moment that you're able to prove an extortionist
> motivation . . . The question is legally, legally: Does that create an
> exception to 230(c)(1)?

(10/16/2011 Hearing, at 23:18-25, ER 58.)

The aforementioned interaction demonstrates that the District Court

acknowledged that the TAC was alleging extortion. Yet, the District Court

never explained how extortion can be illegal criminal conduct under 18 USC

Sec. 875(d) and  Sec. 1951(a), but somehow protected under the

Communications Decency Act.

### 4.    Legislative History of CDA Does Not Support District Court's Ruling.

The CDA was enacted to allow internet providers to "perform some

editing on user-generated content without thereby becoming liable for all

defamatory or otherwise unlawful messages that they didn't edit or delete."
*Roommates.com, LLC*, at 1163. "'[S]ection [230] provides 'Good Samaritan'
protections from civil liability for providers . . . of an interactive computer
service for actions to restrict . . . access to objectionable online material. One of
the specific purposes of this section is to overrule *Stratton-Oakmont* [sic] *v.*
*Prodigy* and any other similar decisions which have treated such providers . . .
as publishers or speakers of content that is not their own because they have
restricted access to objectionable material.'" *Fair Housing Dist. v.*
*Roommates.com, LLC*, at 1163, citing H.R. Rep. No. 104-458 (1996) (Conf.
Rep.), as reprinted in 1996 U.S.C.C.A.N. 10 (emphasis added).

The Ninth Circuit, en banc, pointedly observed: "Indeed, the section is
titled "Protection for 'good samaritan' blocking and screening of offensive
material" and, as the Seventh Circuit recently held, the substance of section
230(c) can and should be interpreted consistent with its caption." *Id*., at 1163,
citing *Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.*,
519 F.3d 666 (2008).

The Ninth Circuit further held: "Providing immunity every time a
website uses data initially obtained from third parties would eviscerate the
exception to section 230 for 'develop[ing]' unlawful content 'in whole or in
part.'" *Roommates.com, LLC*, at 1171, citing 47 U.S.C. § 230(f)(3).

34

Based on the foregoing, the District Court's Order granting "immunity" to Yelp! has essentially given Yelp! and other internet providers a license to extort other small businesses. This is contrary to federal law and contrary to the Congress' whole intent in enacting the CDA.

### 5. Several Legal Decisions Provide Support for Plaintiffs' Position That the CDA Does Not Afford Yelp! Immunity Under the Alleged Facts.

Aside from *Roommates.com, LLC*, another applicable case is *Fraley v. Facebook*, 2011 U.S. Dist. LEXIS 145195; 101 U.S.P.Q.2D (BNA) 1348 (Dec. 16, 2011). In *Fraley*, the District Court held that Facebook was not immune under the CDA when Facebook manipulated plaintiffs' content to make it incorrectly appear that the plaintiffs endorsed certain products and services. *Fraley*, at *39. The District Court based its holding on the critical fact that "Plaintiffs allege that Facebook contributes, at least in part, to the creation or development of the Sponsored Story that ultimately appears on other members' Facebook pages in the form of a product or service endorsement." *Fraley*, at *39. As such, "CDA immunity 'applies only if the interactive computer service provider is not also an 'information content provider,'" *Fraley*, at *39, citing *Roommates.com*, 521 F.3d at 1162. *Fraley* also observed Facebook's actions in creating Sponsored Stories go beyond "a publisher's traditional

editorial functions[,] such as deciding whether to publish, withdraw, postpone or alter content." *Fraley*, at *39-40, citing *Batzel*, 333 F.3d at 1031 n.18.

Another illustrative holding is *Dirty World Entertainment*, where the defendants' claims of immunity against defamation and invasion and privacy claims under the CDA were rejected because the court found that the defendants had partially developed and created the objectionable material at issue. *Jones v. Dirty World Entertainment*, 2012 U.S. Dist. LEXIS 2525, 11-12; 40 Media L. Rep. 1153 (E.D. Kentucky, 2012).

Further support for Plaintiffs' position that no liability shield exists for Yelp! is set forth in *MCW, Inc. v. Badbusinessbureau.com*, *LLC.,* 2004 U.S. Dist. LEXIS 6678, No. 3:02-CV-2727-G at *26 (N.D. Tex. April 19, 2004). In that case, the operators of a web-site called "The Rip-Off Report" provided a consumer complaint forum, which included defamatory messages about the plaintiff in the form of titles, headings, and editorial messages personally written by the web-site operators. Since the plaintiff's claims were based on the operator's content in the form of titles and headings, not on the posted information by third parties, immunity did not protect the defendants because they were "responsible, in whole or in part, for the creation or development of [any disputed] information" under § 230(f)(3). The Texas court used language very applicable here: "In this case, the defendants are clearly information

content providers. Contrary to the defendants' arguments, MCW is not seeking to hold the defendants liable for merely publishing information provided by a third party. Rather, MCW is seeking relief because the defendants themselves create, develop, and post original, defamatory information . . . in the form of report titles and various headings." *MCW*, at *31. The facts in *Badbusinessbureau.com* are analogous to the present case because Yelp! is creating the negative reviews and summary ratings. As such, Yelp! cannot avoid liability under the CDA.

### C.   THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY RULING THAT PLAINTIFFS' ALLEGATIONS WERE MERELY SPECULATIVE.

#### 1.   The Applicable Rules of Pleading Allow for Pleading for Recovery That Is "Remote" and "Unlikely."

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court clarified the federal court pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007). *Twombly* was an antitrust case where the Supreme Court held that in order to plead a claim for antitrust conspiracy, a complaint must allege facts "plausibly suggesting (not merely consistent with) agreement." The Court observed: "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, at 555. Plaintiffs'

37

allegations against Yelp! satisfied the *Twombly* standard because the

allegations were not speculative, but rather concrete and specific. *Twombly*

noted in pertinent part:

> Asking for plausible grounds to infer an agreement does not
> impose a probability requirement at the pleading stage; it simply
> calls for enough fact to raise a reasonable expectation that
> discovery will reveal evidence of illegal agreement. And, of
> course, a well-pleaded complaint may proceed even if it strikes a
> savvy judge that actual proof of those facts is improbable, and
> "that a recovery is very remote and unlikely."

*Twombly*, at 555.  This cited language is significant because the Supreme Court

allows for a complaint to proceed even though proving such may be

"improbable" and "unlikely."  *Id.*

As discussed above, when ruling on the Rule 12(b)(6) motion, the

District Court is to accept the factual allegations of the complaint as true and

must draw all reasonable inferences in favor of the plaintiff.  *Pareto v.

F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  That did not occur.  The District

Court seemingly applied an unarticulated evidentiary test requiring some

unknown burden of proof to be met by the Plaintiffs in order to "prove" that

Yelp! created these negative reviews.

Likewise, a plaintiff must only plead "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

569 (2007).  Plaintiffs did so with specific and articulate facts.

### 2. The District Court Erroneously Applied *Twombly* In Ruling That Plaintiffs' Allegations Were Speculative.

Inexplicably, the District Court glossed over the TAC's specific and significant allegations, somehow finding that "Plaintiffs added only minimal allegations in the TAC . . ." (Order, page 14, line 15-16, ER 15.)  The allegations were not minimal but rather fully satisfy the *Twombly* pleading requirements.  These allegations are consistent with and buttressed by Plaintiffs' own experiences relating to advertising with Yelp!.  Although Plaintiffs simply do not have access to the detailed information that Yelp! must maintain as to what happened to each review of Plaintiffs' businesses each time Plaintiffs were contacted for advertising, the accounts of their experiences demonstrate how Yelp! made its implied extortionate threats.

Even at oral argument, the District Court acknowledged that the TAC alleged Yelp! created and manipulated the content: "There is the manipulation of the ratings . . . And then there is the allegation that Yelp actually created and wrote some of the content of this." (ER 38:6-10.)  As such, the District Court's reading of the TAC as "speculative" does not hold up under analysis, especially given all of the material facts and gratuitous evidentiary facts contained in the TAC.  For example, Appellant Chan alleges that *just days* after she was contacted by Yelp! for advertising and declined to purchase it, Yelp! removed <u>nine</u> of her top-rated 5 star reviews from her Yelp! review page.

(TAC ¶¶ 89-90, ER 358.) Chan further alleges that Yelp! subsequently told Chan that it tweaks the ratings every so often, and that it could help her if she paid for advertising. (TAC ¶ 91, 99, ER 358, 360.)  Similar to Chan, *just two days* after Boris Levitt was contacted by Yelp! for advertising and declined Yelp!'s advertising solicitation, <u>all but one</u> of his top-rated 5 star reviews was removed from his public Yelp! review page.  (TAC ¶49, ER351.)

With Wheel Techniques, a different tact was taken.  Wheel Techniques alleges that it was contacted by Yelp! for advertising,  and *within minutes* after Wheel Techniques declined the offer, a five-star review which had previously been listed at the top of the review page was replaced by a one-star review. (TAC ¶¶ 79-80, ER 356.)  Not only did negative reviews begin to be listed first, around that same time, Wheel Techniques also alleges that negative reviews appeared on its Yelp! review page from reviewers who were not actual customers. (TAC ¶¶ 74-76, ER 355-356.)  Similarly, Cats and Dogs alleges that a Yelp! sales representative began calling Non Sponsor Plaintiff Cats and Dogs and promised to manipulate its reviews if Cats and Dogs purchased advertising.  (TAC ¶¶ 64, ER 356.)  *Not even one week* after Cats and Dogs declined to purchase advertising, Yelp! posted <u>multiple</u> negative reviews. (TAC ¶¶ 66-68, ER354-355.)  One of these negative reviews had been removed by Yelp! previously because it violated Yelp!'s Review Terms; yet

since Plaintiff Cats and Dogs declined to purchase advertising, Yelp! wrongly republished the negative review.  (TAC ¶ 61, ER 353.)

Taken together, these allegations –  along with the additional information Plaintiffs have alleged relating to Yelp!'s authoring of reviews and advertising scamming – are sufficient to allege that Plaintiffs' received implied extortionate threats from Yelp! when they declined to purchase advertising.

**D.      THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY RULING THAT PLAINTIFFS HAVE NOT STATED A VALID CLAIM FOR UNFAIR COMPETITION.**

**1.      The Law of the Case Doctrine Does Not Apply.**

As a preliminary matter, the law of the case doctrine does not and should not be applied to Plaintiffs' UCL claims.  "For the law of the case doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition."  *U.S. v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).  The District Court agreed with the Plaintiffs' analysis, at least as to the new allegations in the TAC.  (10/26/11 Order, 6:23-24, ER 7.)  The District Court further set forth that the TAC would be considered, ". . . as a whole, rather than simply its new allegations."  (10/26/11 Order, 7:3-6, ER 8.)

///

///

41

### 2. Plaintiffs Adequately Alleged Unfair Competition Claims.

The UCL prohibits conduct that is "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Prof. Code § 17200.  "The purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1359 (2010) (internal citations omitted).  Under the UCL, "a business practice need only meet one of the three criteria to be considered unfair competition."  *Id.* (citing *McKell v. Washington Mutual, Inc.,* 142 Cal. App. 4th 1457, 1471 (2006)).  "Therefore, an act or practice is 'unfair competition' under the UCL if it is forbidden by law or, even if not specifically prohibited by law, is deemed an unfair act or practice."  *Id.* (citing *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1335 (2009)).

### a) Plaintiffs Properly Alleged Unlawful Conduct.

As predicates for the "unlawful" prong of the UCL, Plaintiffs allege that Yelp! "unlawfully attempted to and/or did in fact commit extortion as set forth in California Penal Code sections 518, 519, 523, 524, the Hobbs Act, civil extortion and attempted civil extortion."  *See* TAC ¶ 118.  Pursuant to California Penal Code section 518, extortion is defined as "obtaining of property from another, with his consent . . . induced by a wrongful use of . . .

42

fear . . . ." "Fear, such as will constitute extortion, may be induced by a threat . . . to do an unlawful injury to the . . . property of the individual threatened or of a third person . . ." Cal. Penal Code § 519. Attempted extortion is actionable under California law.[3] Both the Hobbs Act definition of extortion and claims for civil extortion and attempted civil extortion are substantially similar to the California Penal Code. *See, e.g.*, 18 U.S.C. § 1951(b)(2); *Hisamatsu v. Niroula*, No. C-07-04371-JSW (EDL), 2009 WL 4456392 at *5 (N.D. Cal. Oct. 22, 2009).

"Under the UCL unlawful prong, it is not necessary that plaintiffs allege violation of the predicate laws with particularity; they must at a minimum, however, identify the statutory or regulatory provisions that defendants allegedly violated." *See In re Actimmune Mktg. Litigation*, No. C 08-02376 MHP, 2009 WL 3740648 at *15 (N.D. Cal. Nov. 6, 2009). Plaintiffs have not only identified the statutory provisions that Yelp! allegedly violated (which, per *Actimmune* should satisfy the minimum pleading requirement), they also pleaded adequate facts giving rise to the violation.

---

[3] *See* Cal. Penal Code § 523 ("Every person who, with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519, is punishable in the same manner as if such money or property were actually obtained by means of such threat"); Penal Code § 524 ("Every person who attempts, by means of any threat, such as is specified in Section 519 of this code, to extort money or other property from another is punishable by imprisonment . . .").

43

It is well-settled that threats – sufficient to constitute extortion or attempted extortion – may be implied.  *See, e.g.,* Cal. Penal Code § 523 (threats may be implied); *see also United States v. Lisinski*, 728 F.2d 887, 891 (1984) ("The implied threat will usually be that, unless the victim cooperates with the extortionist, economic loss will result"); *United States v. Rivera Rangel*, 396 F.3d 476, 484 (1st Cir. 2005) (In context of extortion through fear of economic loss, "we note that it is immaterial that Rivera never explicitly threatened Ventura").  In fact, as described by one court, vague and implied threats are not only actionable, but sometimes more effective.  Indeed,

> [a]n experienced extortionist does not find it necessary to designate specifically what he intends to do as a means of terrifying his prey . . . the more vague and general the terms of the accusation, the better it would serve the purpose of the accuser in magnifying the fears of his victim, and the better also it would serve to protect him in the event of the failure to accomplish his extortion, and of a prosecution for his attempted crime . . . [n]o precise words are necessary to convey a threat. Conduct takes its legal color and quality more or less from the circumstances surrounding it.

*People v. Oppenheimer*, 209 Cal.App.2d 413, 422 (1963) (internal citations and quotations omitted).

### b.  Plaintiffs Properly Alleged Unfair Conduct.

California's unfair competition laws are "sweeping, embracing 'anything that can properly be called a business practice and that at the same time is

forbidden by law.'" *Rubin v. Green*, 4 Cal.4th 1187, 1200 (1993) (quoting

*Barquis v. Merchants Collection Ass'n.,* 7 Cal. 3d 94, 113 (1972)).  A business

practice alleged under the UCL's "unfair prong" may qualify as an unfair

business practice, even if it does not violate another law.  *See Cel-Tech*

*Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999).

The scope of the unfair prong is broad:  "Indeed, . . . the section was

intentionally framed . . . precisely to enable judicial tribunals to deal with the

innumerable 'new schemes which the fertility of man's invention could

contrive.'"  *Id*. at 181 (internal quotations and citations omitted).

     Unfair competition – at least in non-consumer cases is – "conduct that

threatens an incipient violation of an antitrust law, or violates the policy or

spirit of one of those laws . . . or otherwise threatens or harms competition."

*Cel-Tech Commc'ns*, 20 Cal. 4th at 187, n.12 (discussing *Smith v. State Farm*

*Mutual Auto. Ins*. Co, 93 Cal.App.4th 700, 718-19 (2001) (for unfair

competition "the court must weigh the utility of the defendant's conduct

against the gravity of the harm to the alleged victim") and *People v. Casa*

*Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984) (unfair

business practice is one that "offends an established public policy or when the

practice is immoral, unethical, oppressive, unscrupulous, or substantially

injurious to consumers")).

Plaintiffs adequately pled unfair competition by alleging facts showing that Yelp! tries to force small businesses to pay for advertising because if they do not, the business's overall star rating, which is created by Yelp!, will decline.  (TAC ¶¶8-9, 36, 54, 69, 81, 92; ER 346, 349, 352, 355-356, 358.) This, is turn, impacts a business's reputation and profits and devastates small businesses.  (TAC ¶¶10, 123, 55, 71, 83, 102; ER 346, 352-353, 355, 357, 360, 365.)  Plaintiffs further alleged that when they complained about Yelp!'s conduct, Yelp! retaliated against them by removing positive reviews or re-publishing negative reviews to their Yelp! review pages.  (*See, e.g.*, TAC ¶¶ 53, 97; ER 352, 359.)  Yelp!'s conduct favors businesses who purchase advertising to the detriment of businesses that do not purchase advertising. (TAC ¶78, ER 356.)

These facts demonstrate 1) Yelp!'s conduct "harms competition by favoring businesses that submit to Yelp!'s manipulative conduct and purchase advertising to the detriment of competing businesses that decline to purchase advertising and have their reviews negatively manipulated by Yelp!" [TAC ¶119, ER 364]; 2) that the harm caused to class members due to Yelp!'s conduct, including damage caused to their sales, revenues, assets, and business reputations, greatly outweighs any benefit to Yelp! in advertising sales [TAC ¶120, ER 364]; and 3) that the harm caused to class members, including threats,

46

retaliation, extortion, and attempted extortion is substantially injurious to consumers and is immoral and unethical [TAC ¶¶121; ER 364]. Accordingly, Plaintiffs' allegations are sufficient to meet several of the "unfair" competition tests. See, *e.g., Colonial Am. Casualty and Surety Co. v. Bay Commercial Construction Co.*, No. C 04-1714 PJH, 2004 WL 2434955 (N.D. Cal. Oct. 29, 2004) (finding that although motion to dismiss as to breach of contract claim was granted, that "[g]iven the flexible nature of the definition of 'unfair' under § 17200, BCC had alleged sufficient facts in its breach of contract claim for there to be a possibility that it could prove that counter-defendants acted unfairly].")

Should the Court of Appeals somehow find that Yelp!'s alleged conduct does not qualify as extortion, Yelp!'s manipulative and retaliatory conduct is precisely the type of activity the "unfair" prong of the UCL was intended to encompass. *See, e.g.*, *Cel-Tech,* 20 Cal. 4th at 181 ("When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one") (internal quotations omitted).

The TAC contains ample facts more than adequate to show a threat to competition. (See, *e.g.*, TAC ¶78, ER 356.) (when Wheel Techniques asked

47

why a competitor, known for performing "shoddy work" had five stars, Yelp!

told him that it was because his competitor advertised and that "we work with

your reviews if you advertise with us.")

Plaintiffs further submit that the balancing inquiry required to

determine whether a business practice is unfair is generally a factual inquiry

and cannot be made on the pleadings. "California courts, have noted that the

determination of whether a business practice is unfair is one of fact which

requires a review of the evidence from both parties and often cannot be made

solely on the pleadings." *Ferrington v. McAfee, Inc*., 2010 WL 3910169 at *

13 (N.D. Cal. Oct. 5, 2010). Accordingly, the fact that Plaintiffs do not

quantify the precise extent of their harm in the pleadings does not mean they

will not be able to calculate their harm and prove a claim for unfair

competition. *See id.* (denying defendant's motion to dismiss plaintiff's claim

under unfair prong of UCL because plaintiffs may be able to show that

"deception was unscrupulous and causes injury to consumers which

outweighs its benefits").

### E. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY RULING THAT PLAINTIFFS HAVE NOT STATED A VALID CLAIM FOR CIVIL EXTORTION AND ATTEMPTED CIVIL EXTORTION.

The District Court only indirectly addressed the viability of Plaintiffs'

claims for civil extortion and attempted civil extortion, holding that "Plaintiffs'

48

allegations of extortion based on Yelp's alleged manipulation of their review pages . . . falls within the conduct immunized by Sec. 230(c)(1)." (10/26/11 Order, 9:3-5, ER10.) Likewise, the District Court addressed the issue in footnote 5 of its Order when it held that the claim "rises and falls along with Plaintiffs' 17200 Claim." (10/26/11 Order, 13, fn. 5, ER 24.)

Over recent years, several federal courts have ruled that a claim for civil extortion and attempted civil extortion exists in California. *See Monex v. Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1155-56 (C.D. Cal. 2010) ("The Court has previously held in this case that a claim for attempted extortion is implied from California Penal Code sections 523 and 519" and explaining elements that must be shown for a civil tort action); *Padgett v. City of Monte Sereno*, No. C 04-03946 JW, 2007 WL 878575 at *1 (N.D. Cal. March 20, 2007) (plaintiff alleged claim for civil extortion); *Hisamatsu v. Niroula*, No. C-07-04371-JSW (EDL), 2009 WL 4456392 at *5 (N.D. Cal. Oct. 22, 2009) (construing claim in second amended complaint as civil extortion and stating that it was adequately alleged). In so doing, "[c]ourts have relied on the definition and elements of the criminal code to analyze civil extortion claims." *See Hisamatsu*, 2009 WL 4456392 at *5. As noted by a court in this district, "California has long recognized a claim of 'civil extortion.'" *Id*.

49

Plaintiffs have adequately alleged the required elements for extortion under the California Penal Code, including that there was an implied threat by Yelp!.  Accordingly, they have adequately alleged claims for civil extortion and attempted civil extortion.  *See Hisamatsu*, 2009 WL 4456392 at *5.

**F.     THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY PROHIBITING PLAINTIFFS FROM OBTAINING DISCOVERY BEFORE ORDERING DISMISSAL OF THE CASE.**

At hearing, Plaintiffs' counsel pointed out to the Court that the Plaintiffs were denied discovery on these specific allegations which the District Court labeled as "speculative."  (ER 41:22-42:2.) Counsel emphatically pointed out: "How can anybody be expected to plead, keeping in mind we have to make good faith pleadings. We can't just conjecture. How can anybody come forward to make a case when they can't get to the evidence." (ER 42:3-6.)

When a factual challenge is made to a complaint's jurisdictional allegations, "discovery is necessary . . .  if it is possible that the plaintiff can demonstrate the requisite jurisdictional facts if afforded that opportunity."  *St. Clair*, 880 F.2d at 201.  Further, discovery should be permitted "where the facts are peculiarly within the knowledge of the opposition party."  *GreenPeace, Inc. v. State of France*, 946 F. Supp. 773, 789 (C.D. Cal. 1996); *see also Farr*, 990 F.2d at 454 (would have been fair to allow party to obtain

50

some discovery when faced with a 12(b)(1) motion). "It is an abuse of discretion to dismiss for lack of subject matter jurisdiction without giving plaintiff reasonable opportunity, if requested, to conduct discovery for this purpose." *GreenPeace, Inc.*, at 789.

Another pertinent holding is contained in *Swanson v. Citibank, N.A.*, 614 F.3d 400, 412 (7th Cir. 2010) (Posner, dissenting in part) (noting that in light of Supreme Court's new approach, which requires a plaintiff to conduct a more extensive precomplaint investigation, that if "the plaintiff shows that he can't conduct an even minimally adequate investigation without limited discovery, the judge presumably can allow that discovery, meanwhile deferring on the defendant's motion to dismiss") citing *Miller v. Gammie,* 335 F.3d 889 (9th Cir. 2003) (en banc).

Here, Plaintiffs were denied the opportunity to conduct jurisdictional discovery on disputed, controlling issues of fact – whether Yelp!'s conduct in manipulating and contributing to Plaintiffs' reviews caused them harm – that are in dispute. Plaintiffs' previous attempt to obtain discovery of former Yelp! sales employees' contact information – which was denied –  would have likely assisted them to obtain and submit evidence necessary to oppose Yelp's standing challenge. This discovery would have likely allowed Plaintiffs to understand exactly how Yelp!'s behind-the-scenes conduct impacted reviews

51

of Plaintiffs' businesses and why their reviews (and thousands of others) would suddenly change after they declined to purchase advertising. Accordingly, since Court considered Yelp!'s extrinsic evidence and dismissed the TAC, Plaintiffs request that the Court of Appeals allow the Plaintiffs to conduct limited discovery related to the issues raised by the standing challenge and to submit evidence obtained from that discovery upon remand.

### G.    THE DISTRICT COURT CORECTLY RULED THAT PLAINTIFFS HAVE ARTICLE III STANDING.

The District Court denied Yelp!'s motion to dismiss for lack of standing, so that issue is not being appealed. (10/26/11 Order, p.5:21-22, ER 6.) However, in the event that Defendant Yelp! raises the issue as being an independent reason for the dismissal of Plaintiffs' claims, Plaintiffs addresses that issue here briefly.

Article III of the Constitution confers standing on a party if the party can demonstrate: "(1) it has suffered 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.*, 528

U.S. 167, 180-81 (2000). Under Rule 12(b)(1), "the defendant may either challenge jurisdiction on the face of the complaint or provide extrinsic evidence demonstrating lack of jurisdiction on the facts of the case." *Rachford v. Air Line Pilots Assoc.*, No. C 03-3618PJH, 2006 WL 1699578 at *3 (N.D. Cal. June 16, 2006).

"Standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, [may not] be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true." *Catholic League for Religious and Civil Rights v. City & Cnty. of S.F.*, 624 F.3d 1043, 1049 (9th Cir. 2010).

The Article III standing issue had already been adjudicated in Plaintiffs' favor before Judge Chen's dismissal. The Court had held in its March 22, 2011 Order that Plaintiffs had alleged facts sufficient to confer Article III standing. (Judge Patel's Order, 9:15-16, ER 10.) Despite the previous order and in conjunction with Yelp's refusal to permit Plaintiffs to conduct even limited discovery, Yelp again contested Plaintiffs' standing by raising a 12(b)(1) factual challenge. Plaintiffs argued that Yelp's evidence was not conclusive and did not defeat Plaintiffs' standing. The Court agreed. In the Order of October 26, 2011, the District Court held that "permitting a Rule 12(b)(1) challenge based on facts asserted by Yelp would be inappropriate." (10/26/11

Order, page 5, lines 9-11, ER 6.) The District Court thus denied Yelp!'s motion to dismiss for lack of standing. (10/26/11 Order, page 5, line 21-22, ER 6.) Plaintiff simply raises these points relating to Article III standing again in an abundance of caution.

Yelp failed to prove that Plaintiffs' injuries are not connected to Yelp's wrongful conduct in generating or modifying the content of reviews and manipulating reviews.  Yelp's reliance on the Ian MacBean Declaration is misplaced because there is no factual basis underlying the majority of its assertions (e.g., it fails to provide the most basic information about declarant such as how long he has worked at Yelp!) and instead consists largely of hearsay and speculation. Plaintiffs' properly and timely submitted evidentiary objections to this evidence.  (ER 148.)  However, these evidentiary objections were erroneously overruled.  (10/26/11 Order, p.5, fn. 2, ER 5.)

Plaintiffs argued that Yelp!'s contention that it has "confirmed that none of the consumers who created and posted [the reviews about Plaintiffs] are current or former employees or agents of Yelp" (Yelp MTD, 21:10-13, ER 338.) relies upon cursory, non-exclusive searches that are based only on information provided to Yelp by its users.  Specifically, Yelp!'s purported "confirmation," relied on searches 1) to determine whether each reviewer's Yelp! user profile was "flagged in Yelp's database" as being associated with a

54

current or former employee; 2) running a search of the first and last names that reviewers provided to Yelp in a database of current and former Yelp! employees; 3) checking the email addresses provided by the reviewers to Yelp to see if any had an @yelp.com email address; and 4) reviewing the IP address provided by each reviewer in connection with each of the Plaintiffs' reviews to see if they were associated with any Yelp IP address. *See* Declaration of Ian MacBean (Dkt. No. 80), ¶¶ 2-5, ER 220-221. This does not verify that Yelp employees did not post reviews or alter reviews on Plaintiffs' business pages and that Yelp's conduct did not cause Plaintiffs' harm. *See Farr v. United States*, 990 F.2d 451, 454 (9th Cir. 1993) ("although [certificates] were proper evidence, they were not necessarily conclusive evidence").

A closer look at these searches demonstrates that they are not conclusive or exclusive. Yelp! necessarily has to rely on the information provided by its users – such as first and last name. Common sense mandates that if a user does not provide their true first and last name, then Yelp!'s comparison of user names with its list of current and former employees is meaningless. A Yelp! employee could have registered as a user under a different first or last name or both. If Yelp! uses first and last name information to "flag" user accounts associated with current or former Yelp! employees, then that search is also inconclusive. No information, however, is provided about how Yelp! would

55

know whether a user account should be flagged, particularly given its representation that a group of "certain [Yelp!] employees" are "prohibited" from providing written content to the website. (MacBean Decl., ¶2, ER 220.)

Similarly, Yelp!'s reliance on email addresses provided by its users will fail. "The fact that none of the Yelp posters used a Yelp email address in their contact information does not mean that the poster was not a Yelp employee." (Declaration of Richard Gralnik, ¶10, ER 181.) Hundreds of free services on the internet allow persons – including any Yelp employee – to "create one or more entirely anonymous, completely unverified and perfectly valid email accounts." *Id.*

Finally, Yelp!'s search of "IP addresses" again fails because it relies upon information provided by the user to Yelp!. "The fact that the posted reviews about the named Plaintiffs did not originate from the IP address of a computer or device at Yelp does not mean that the posts could not have come from a Yelp computer or device." (Gralnik Decl., ¶12, ER 181.) Just as with email services, there are "numerous 'anonymizer' sites on the Internet designed to hide a user's actual IP address from other users such as Yelp." (*Id.* at ¶13, ER 181.)

The MacBean declaration fails to exclude the possibility that – as Plaintiffs alleged – one or more Yelp! employees generated negative reviews,

modified the content or reviews or otherwise manipulated reviews to the detriment of Plaintiffs.  Therefore, since Plaintiffs' injuries are linked to Yelp!'s improper conduct, Plaintiffs have again demonstrated they have properly alleged standing.

### H.    PLAINTIFFS HAVE CLASS STANDING.

The District Court did not address Yelp!'s motion to strike Plaintiffs' class allegations because it determined that "the TAC fails to state a plausible claim for relief." (10/26/11 Order, pg 14, line 21-22, ER 15.)  Because the motion to dismiss is being reviewed de novo, Plaintiffs here present their arguments supporting the propriety of their class allegations.

A motion to strike was not the appropriate vehicle for Yelp! to strike Plaintiffs' class allegations, since class action allegations are not the type of "redundant, immaterial, impertinent, or scandalous matters" that Rule 12(f) is designed to address. Fed. R. Civ. P. 12(f).

Yelp!'s request that the Class allegations be dismissed and/or stricken was premature and without merit.  The subclass definitions are sufficient because the subclass members will be readily identifiable from Defendant's electronic records.  To identify the members of each subclass, one would simply need to determine which class members Yelp! communicated with regarding advertising (likely traceable through Yelp!), which reviews Yelp!

57

manipulated in a manner that did not comply with the Review Terms (traceable

through electronic data), and which Sponsor class members paid Yelp! for

advertising thereafter (also tracked through Yelp! records).  Accordingly,

Defendant's contention that Plaintiffs failed to allege an ascertainable class

because individual issues predominate lacks merit.

Defendant's argument that the TAC's allegation that a group of Yelp!

sales employees were terminated – after this lawsuit was filed – because of

scamming related to advertising in no way defeats Plaintiffs' class allegations.

In fact, if there was a policy of "scamming" amongst Yelp! employees, as

alleged by Plaintiffs, and because of this lawsuit Yelp! suddenly attempted to

eliminate those employees and end that conduct, Plaintiffs would certainly still

be able to certify a class (even if limited in time) once discovery took place.[4]

Yelp! Argued at the District Court level that the class allegations are

deficient because the class involves businesses and persons who were in

contact with Yelp! regarding the option to advertise regardless of whether

Yelp! made an unlawful threat or the class members felt fear or purchased

---

[4] *See, e.g.*, *Westways World Travel, Inc. v. AMR Corp.*, No. EDCV 99-386, 2005 WL 6523266 at *8 (C.D. Cal. Feb. 24, 2005) (stating that class certification claim on extortion is "viable if it is susceptible to class-wide proof") (citing *George Lussier Enters., Inc. v. Subaru of New England, Inc.*, 2001 WL 920060 at *17 (D.N.H. Aug. 3, 2001) (offering internal documents showing plan to extort dealers and testimony of former employees regarding plan susceptible to class certification)).

58

advertising because of Yelp!'s threat. (*See* MTD, 25, ER 342.)  This assessment, however, fails because the subclasses are defined to include class members that were subject to Yelp!'s manipulations, which, are sufficient to constitute at a minimum *attempted* extortion, regardless of whether the class member felt any fear or felt compelled to purchase advertising.  Moreover, if Plaintiffs were to define their class by a class member's feeling of fear (which is unnecessary), it would necessitate the types of individual inquiries that defeat class certification (i.e., each class member would need to be asked if they experienced fear).

Finally, Yelp! has argued that Plaintiffs cannot satisfy the typicality requirement because their claims are factually inconsistent.  It is well-settled that class certification may be proper "even though varying fact patterns support the claims or defense of individual class members or there is a disparity in damages by the representative parties and other members of the class." *Schlagal v. Learning Tree, Int'l*, No. 98-6384, 1999 WL 672306 at *3 (C.D. Cal. Feb. 23, 1999).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ewert v. eBay, Inc.,* Nos. C-07-0219 RMW, C-07-04487 RMW, 2010 WL 4269259 at *3 (N.D. Cal. Oct. 25, 2010).

59

Plaintiffs allege facts common to each of them (and the class members): that Yelp! was in contact with Plaintiffs for advertising, that Yelp! manipulated Plaintiffs' reviews in a way that did not comply with its Review Terms, and that the Sponsor Plaintiffs purchased advertising. Plaintiffs need not show that class members relied on the same communications, received the same reviews and ratings, or that they all did (or did not) purchase advertising. *See Ewert*, 2010 WL 4269259 at *3 ("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.").

"Where, as here, it is not 'plain from the pleadings' that the class should not be certified, discovery and full briefing on class certification is warranted." *Dodd-Owens v. Kyphon, Inc*., No. C06-3988, 2008 WL 410241 at *3 (N.D. Cal. Feb. 12, 2008) (citing *Myers v. Medquist, Inc*., No. 05-4608, 2006 WL 3751210 (D.N.J. Dec. 20, 2006) (declining to strike class allegations because discovery had not yet commenced and noting that most courts deny motions to strike if brought prior to discovery). For that reason, Yelp!'s Motion to Dismiss and/or Strike Plaintiffs' class allegations should be denied if it is considered by this Court of Appeals.

///

///

## II.  CONCLUSION

For the foregoing reasons, Plaintiffs-Appellants respectfully request that the Court of Appeals reverse the Order Dismissing Plaintiffs' Third Amended Complaint, and remand the action to the District Court for further proceedings and trial.

Respectfully submitted,

MURRAY & ASSOCIATES

Dated:        February 27, 2012        By: _/s/  Lawrence D. Murray_____
                                       LAWRENCE D. MURRAY, ESQ.
                                       JOHN F. HENNING III, ESQ.
                                       ROBERT C STRICKLAND, ESQ.
                                       Attorneys for Plaintiffs and Appellants

61

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED.R.APP. 32(a)(7)C) AND CIRCUIT RULE 32-1

I certify that:

Pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, the

attached opening brief is proportionately spaced, has a typeface of 14 points or

more and contains 12,772 words.

Respectfully submitted,

MURRAY & ASSOCIATES

Dated:    February 27, 2012    By:  /S/Lawrence D. Murray
                                LAWRENCE D. MURRAY, ESQ.
                                JOHN F. HENNING III, ESQ.
                                ROBERT C STRICKLAND, ESQ.
                                Attorneys for Plaintiffs and Appellants

## STATEMENT OF RELATED CASES
## PURSUANT TO NINTH CIRCUIT RULE 28-2.6

Plaintiffs are unaware of any pending related cases before this Court as defined in Ninth Circuit Rule 28-2.6.

Respectfully submitted,

MURRAY & ASSOCIATES

Dated:      February 27, 2012          By:  /S/Lawrence D. Murray
                                       LAWRENCE D. MURRAY, ESQ.
                                       JOHN F. HENNING III, ESQ.
                                       ROBERT C STRICKLAND, ESQ.
                                       Attorneys for Plaintiffs and Appellants

63

## CERTIFICATE OF SERVICE

I am employed in the City and County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 1781 Union Street, San Francisco, California 94123; (415) 673-0555. On this date, I served the following document(s): **APPELLANTS' BRIEF** on the interested parties in this action as follows:

S. Ashlie Beringer
Susannah Stroud Wright
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304
ABeringer@gibsondunn.com,
SWright2@gibsondunn.com

Gail Ellen Lees
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
GLees@gibsondunn.com

Aaron Schur
YELP! INC.
706 Mission Street, 8th Floor
San Francisco, CA 94103
aschur@Yelp!.com

[XX] **[BY ELECTRONIC CASE FILING (ECF)]**  I caused the above document(s) to be e-filed using the United States District Court, Northern District of California's mandated ECF service. Counsel of record are required by the Court to be registered e-filers, and as such are automatically served by the Court via email with a copy of the document(s). *Per the ECF helpdesk and court clerk and due to ECF outage on February 27, 2012, this brief was permitted to be e-filed on February 28, 2012 without a motion.*

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed in San Francisco, California, on February 28, 2012.

/s/ Jonathan Wong_____

64